WIEAND, Judge:
 

 Randy Lee Kilgore was tried by jury and was found guilty of delivery of cocaine and possession of cocaine with intent to deliver. Post-trial motions were denied, and Kilgore was sentenced to serve concurrent terms of imprisonment for not less than four years nor more than eight years. On direct appeal from the judgment of sentence, Kilgore challenges trial and pre-trial rulings made by the trial court.
 

 With the aid of Scott Winter, a suspect in another criminal matter, arrangements were made by state police to purchase from Kelly Jo Kilgore, the former wife of the defendant, Randy Lee Kilgore, an “eighth kilo” (approximately four and one-half ounces) of cocaine in the parking lot of the Brogue General Store in Chanceford Township, York County, on July 6, 1991. At or about 7:00 p.m. on that date, Winter and Kelly met in the parking lot, where Winter informed Kelly that he had a buyer waiting “up the road” and wanted an ounce of cocaine. The “buyer” wanted to examine this cocaine, he said and, if he were satisfied, Winter would buy an additional three and one-half ounces on his behalf. Winter then paid Kelly the sum of $1,300.00 from funds which had been supplied by the police, and Kelly got back in her car and drove away to get the cocaine.
 

 While under surveillance by police in an unmarked car, Kelly drove to the home of her father, approximately a mile away. There, she exited her car and met her husband, Randy Kilgore. Both were observed as they walked toward a pickup truck which had been parked in the driveway. The surveilling policeman then lost sight of the Kilgores as he passed the
 
 *494
 
 home and turned his vehicle around out of sight of the home. When he returned, he saw the Kilgores walking away from the truck. Kelly then got into her car and returned to the Brogue General Store, where she delivered approximately an ounce of cocaine to Winter. He signalled the waiting police, who then moved in and placed Kelly under arrest. A search of her person produced a small quantity of cocaine and drug paraphernalia, but she did not have the $1,300.00 dollars which Winter had paid to her or the additional cocaine which Winter had expressed a desire to purchase.
 

 Police then went to the home of Kelly’s father, Otis Brown, where Trooper Kurt Voggenreiter went to the back door. The back door was open, and through a screen door he could see the interior of the kitchen. When he saw someone run from the kitchen, he announced the presence of police and entered. He found Randy Kilgore in the living room and placed him in the custody of other police personnel who had entered the kitchen. With the consent of Otis Brown, the owner, the premises were then searched, but neither cocaine nor the money paid to Kelly Kilgore during the prior cocaine transaction was discovered.
 

 Without a warrant or consent of the owner, other police conducted a search of Randy Kilgore’s truck, which was parked at the rear of the residence. They found several small bags of cocaine in a beverage cup on the front floor of the truck. The cocaine was later determined to weigh approximately three and one-half ounces. Randy Kilgore was then arrested and placed in the back of a police vehicle. He later told police that the money they were seeking was under the living room carpet. There they found $2,100.00, which included $1,300.00 in pre-recorded bills which had been paid to Kelly Kilgore.
 

 The trial court refused to suppress the cocaine found in Randy Kilgore’s truck, and this, it is argued on appeal, was error. Our standard of review of this issue was stated in
 
 Commonwealth v. Govens,
 
 429 Pa.Super. 464, 632 A.2d 1316 (1993), as follows:
 

 
 *495
 
 In conducting appellate review of the ruling of the suppression court, this Court:
 

 ‘must determine whether the factual findings are supported by the record. When it is a defendant who has appealed, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Assuming that there is support in the record, we are bound by the facts as are found and we may reverse the suppression court only if the legal conclusions drawn from those facts are in error.’
 

 Commonwealth v. Whitney,
 
 511 Pa. 232, 239-240, 512 A.2d 1152, 1156 (1986), quoting
 
 Commonwealth v. Cortez,
 
 507 Pa. 529, 532, 491 A.2d 111, 112 (1985),
 
 cert. denied,
 
 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985). See also:
 
 Commonwealth v. O’Shea,
 
 523 Pa. 384, 395, 567 A.2d 1023, 1028 (1989),
 
 cert. denied,
 
 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 180 (1990);
 
 Commonwealth v. Hughes,
 
 521 Pa. 423, 438-439, 555 A.2d 1264, 1271-1272 (1989).
 

 Id.
 
 at 473, 632 A.2d at 1320.
 

 With respect to searches of motor vehicles, the Pennsylvania Supreme Court has said, in
 
 Commonwealth v. Milyak,
 
 508 Pa. 2, 493 A.2d 1346 (1985), the following:
 

 While searches and seizures conducted outside the judicial process, without prior approval by a magistrate, are generally unreasonable under the Fourth Amendment,
 
 Katz v. United States,
 
 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967);
 
 Mincey v. Arizona,
 
 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978), there is an established departure from the warrant requirement for certain automobile searches based on the inherent mobility of vehicles, with the consequent practical problems in obtaining a warrant prior to infringing a legitimate expectation of privacy, and on the “diminished expectation of privacy which is accorded automobiles because of their open construction, their function, and their subjection to a myriad of state regulations.”
 
 Commonwealth v. Timko,
 
 491 Pa. 32, 38, 417 A.2d 620, 623 (1980)
 
 citing United States v. Chad
 
 
 *496
 

 wick,
 
 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); see
 
 also, South Dakota v. Opperman,
 
 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976);
 
 Commonwealth v. Mangini,
 
 478 Pa. 147, 386 A.2d 482 (1979). Accordingly, as stated by this Court in
 
 Commonwealth v. Lewis,
 
 442 Pa. 98, 275 A.2d 51 (1971):
 

 To justify ... a [warrantless] search ..., an officer must have independent probable cause to believe that a felony has been committed by the occupants of the vehicle, or that it has been used in the furtherance of the commission of a felony, or the officer must have a basis for believing that evidence of a crime is concealed within the vehicle, or that there are weapons therein which are accessible to the occupants.
 

 Id.
 
 at 101, 275 A.2d at 52;
 
 see also, Commonwealth v. Shaffer,
 
 447 Pa. 91, 288 A.2d 727 (1972)
 
 citing Chambers v. Maroney,
 
 [399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) ]
 
 supra; Commonwealth v. Smith,
 
 443 Pa. 151, 277 A.2d 807 (1971);
 
 Commonwealth v. Dussell,
 
 439 Pa. 392, 266 A.2d 659 (1970)
 
 citing Dyke v. Taylor Implement Manufacturing Co.,
 
 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968). Thus, where there exists probable cause related to the vehicle or its occupants, a search of the vehicle is permissible.
 

 Id.
 
 at 7-8, 493 A.2d at 1349. See also:
 
 United States v. McGlory,
 
 968 F.2d 309, 343 (3d Cir.1992);
 
 United States v. Salmon,
 
 944 F.2d 1106, 1123 (3d Cir.1991),
 
 cert. denied, Washington v. United States,
 
 502 U.S. 1110, 112 S.Ct. 1213, 117 L.Ed.2d 451 (1992);
 
 Commonwealth v. Germann,
 
 423 Pa.Super. 393, 398-399, 621 A.2d 589, 592 (1993).
 

 “The level of probable cause necessary for a warrant-less search of an automobile is the same as that needed to obtain a [search] warrant.”
 
 Commonwealth v. Talley,
 
 430 Pa.Super. 351, 357, 634 A.2d 640, 643 (1993);
 
 Commonwealth v. Pleummer,
 
 421 Pa.Super. 51, 56, 617 A.2d 718, 721 (1993),
 
 allocatur denied,
 
 536 Pa. 622, 637 A.2d 282 (1993). In
 
 Commonwealth v. Rodriguez,
 
 526 Pa. 268, 585 A.2d 988 (1991), the Pennsylvania Supreme Court explained:
 

 
 *497
 
 In this Commonwealth, the standard for evaluating whether probable cause exists is the “totality of the circumstances” test set forth in
 
 Illinois v. Gates,
 
 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
 
 See Commonwealth v. Baker,
 
 513 Pa. 23, 518 A.2d 802 (1986),
 
 Commonwealth v. Gray,
 
 509 Pa. 476, 503 A.2d 921 (1985). The bench mark of a warrantless arrest is the existence of probable cause, namely, whether the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime.
 
 Commonwealth v. Wagner,
 
 486 Pa. 548, 406 A.2d 1026 (1979). Applying that test to the within case, the veracity and basis of knowledge of those persons supplying hearsay information must be examined to determine whether there is a “fair probability that contraband or evidence of a crime will be found in a particular place.”
 
 Commonwealth v. Baker, supra,
 
 513 Pa. at 26, 518 A.2d at 803.
 

 Id.
 
 at 272-273, 585 A.2d at 990. “Once the requirement of probable cause is satisfied, the exigencies regarding the inherent mobility of a vehicle and inadequate time to obtain a search warrant render a warrantless vehicle search proper even when the accused is in police custody.”
 
 Commonwealth v. Elliot,
 
 416 Pa.Super. 499, 504, 611 A.2d 727, 729 (1992),
 
 allocatur denied,
 
 534 Pa. 646, 627 A.2d 177 (1993). After probable cause exists, the police are not required to watch over or immobilize a vehicle while a search warrant is obtained. See:
 
 Commonwealth v. Baker,
 
 518 Pa. 145, 149, 541 A.2d 1381, 1383-184 (1988);
 
 Commonwealth v. Camacho,
 
 425 Pa.Super. 567, 578-580, 625 A.2d 1242, 1248-1249 (1993).
 

 The suppression court found that police had probable cause to search appellant’s truck. The evidence showed that Kelly Kilgore had left the parking lot of the Brogue General Store to obtain cocaine and had been followed. She entered her car and drove directly to her father’s home where, without entering the home, she met her husband. The two of them then walked toward the truck. The following police car passed the
 
 *498
 
 home and for a few minutes was out of sight of the truck. After the police car was turned around and returned, however, Kelly and Randy Kilgore were observed walking back from the truck. Kelly then got into her car and drove directly to the parking lot of the store, where she delivered an ounce of cocaine to Scott Winter. _ Subsequently, when police searched the Brown home, they did not find any cocaine, even though Kelly had assured Scott Winter that she had an additional three and one-half ounces of cocaine to sell.
 

 Under these circumstances, we find no error in the trial court’s finding that the police had probable cause for believing that cocaine was present in the truck. See and compare:
 
 Commonwealth v. Elliot, supra; Commonwealth v. Jenkins,
 
 401 Pa.Super. 580, 585 A.2d 1078 (1991),
 
 allocatur denied,
 
 528 Pa. 621, 597 A.2d 1151 (1991). Moreover, once police had probable cause to search the vehicle, a search of closed containers in that vehicle was also permissible. See:
 
 California v. Acevedo,
 
 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991);
 
 Commonwealth v. Elliot, supra; Commonwealth v. Hoffman,
 
 403 Pa.Super. 530, 589 A.2d 737 (1991),
 
 allocatur denied,
 
 530 Pa. 652, 608 A.2d 28 (1992).
 

 During direct examination, the Commonwealth showed that its witness, Scott Winter, had previously been convicted of forgery, of several burglaries and of several thefts. Appellant also sought to show that Winter had been convicted of arson, but the prosecution asserted and the trial court found that Winter’s arson conviction was not crimen falsi.
 
 [1]
 
 Therefore, the trial court excluded evidence that the witness had been convicted of arson. Appellant argues in this Court, as he did in the trial court, that because arson is a felony, a conviction thereof is admissible to attack the credibility of a witness.
 

 In
 
 Commonwealth v. Randall,
 
 515 Pa. 410, 528 A.2d 1326 (1987), the Supreme Court adopted the following rule:
 

 
 *499
 
 [EJvidence of prior convictions can be introduced for the purpose of impeaching the credibility of a witness if the conviction was for an offense involving dishonesty or false statement, and the date of conviction or the last day of confinement is within ten years of the trial date. If a period greater than ten years has expired the presiding judge must determine whether the value of the evidence substantially outweighs its prejudicial effect.
 

 Id.
 
 at 415, 528 A.2d at 1329. See:
 
 Commonwealth v. Jackson,
 
 526 Pa. 294, 585 A.2d 1001 (1991);
 
 Commonwealth v. Walker,
 
 384 Pa.Super. 562, 559 A.2d 579 (1989);
 
 Commonwealth v. Flis,
 
 369 Pa.Super. 275, 535 A.2d 157 (1987),
 
 allocatur denied,
 
 519 Pa. 659, 546 A.2d 620 (1988). See also: Packel and Poulin, Pennsylvania Evidence, Ch. VI, § 609 (1987). Thus, it is now established that a witness may be impeached on the basis of a prior conviction only if the crime involves dishonesty or false statement.
 
 Commonwealth v. Mehalic,
 
 382 Pa.Super. 264, 285, 555 A.2d 173, 183 (1989). “[A] witness may not be impeached on the basis of convictions for crimes not involving dishonesty or false statement.”
 
 Commonwealth v. Williams,
 
 524 Pa. 404, 407, 573 A.2d 536, 538 (1990). See also:
 
 Commonwealth v. Penn,
 
 497 Pa. 232, 244, 439 A.2d 1154, 1160 (1982),
 
 cert. denied,
 
 456 U.S. 980, 102 S.Ct. 2251, 72 L.Ed.2d 857 (1982);
 
 Commonwealth v. Corley,
 
 432 Pa.Super. 371, 379, 638 A.2d 985, 989 (1994). Indeed, the Supreme Court has said that “the law regarding impeachment of a witness and impeachment of a defendant is consistent in prohibiting impeachment regarding prior arrests and prior convictions for crimes not involving crimen falsi.”
 
 Commonwealth v. Stokes,
 
 532 Pa. 242, 256, 615 A.2d 704, 711 (1992).
 

 It follows that appellant’s argument must fail. Even a felony conviction is admissible to impeach the credibility of a witness only if the crime involved dishonesty or false statement. Because the record does not enable us to determine whether the witness’s arson conviction was based on a reckless act or a dishonest act,
 
 [2]
 
 we cannot say that the trial court erred
 
 *500
 
 when it excluded evidence thereof to impeach the witness’s credibility.
 

 Appellant’s argument that the prosecution failed to establish a chain of custody sufficient to permit the cocaine to be received in evidence must also be rejected. “Physical evidence may be. admitted at trial without demonstrating to an absolute certainty the precise chain of custody.”
 
 Commonwealth v. Culmer,
 
 413 Pa.Super. 203, 217, 604 A.2d 1090, 1097 (1992) . “Real evidence is sufficiently authenticated if ‘evidence, direct or circumstantial, establishes a
 
 reasonable
 
 inference that the identity and condition of the exhibit remained unimpaired until it was surrendered to the trial court.’ ”
 
 Commonwealth v. Schwartz,
 
 419 Pa.Super. 251, 269, 615 A.2d 350, 359 (1992),
 
 allocatur denied,
 
 535 Pa. 617, 629 A.2d 1379 (1993) , quoting
 
 Commonwealth v. Hudson,
 
 489 Pa. 620, 414 A.2d 1381 (1980).
 

 In the instant case, there was no evidence suggesting a break in the chain of custody of the cocaine seized from appellant’s truck. Moreover and in any event, “gaps in the chain of custody go to the weight to be given to the testimony, not its admissibility.”
 
 Commonwealth v. Bolden,
 
 486 Pa. 383, 388-389, 406 A.2d 333, 335-336 (1979). Here, the jury could find that the cocaine received at trial was the contraband removed from appellant’s truck. The trial court did not err when it allowed this evidence to be admitted.
 

 Finally, appellant contends that the trial court erred when it permitted Kimberly Souder to testify as an expert in analyzing and identifying the alleged contraband as cocaine. In'
 
 Commonwealth v. McCloy,
 
 393 Pa.Super. 217, 574 A.2d 86 (1990),
 
 allocatur denied,
 
 527 Pa. 585, 588 A.2d 508 (1991), the Superior Court reviewed the applicable law as follows:
 

 To qualify as an expert witness, a witness need only have a “reasonable pretension to specialized knowledge,” on a subject for which expert testimony is admissible.
 
 Commonwealth v. Washington,
 
 235 Pa.Super. 339, 340 A.2d 896 (1975). An expert’s pretension to specialized knowledge may be based upon practical, occupational, or other exper
 
 *501
 
 iential training; the expert need not have gained expertise through academic training.
 
 Commonwealth v. Ellis,
 
 354 Pa.Super. 11, 510 A.2d 1253 (1986);
 
 Commonwealth v. Daniels,
 
 280 Pa.Super. 278, 421 A.2d 721 (1980). The determination of whether a witness is qualified to offer an expert opinion on a particular subject is a matter addressed to the sound discretion of the trial court, and its discretion will not be reversed absent a clear abuse of discretion.
 
 Commonwealth v. Samuels,
 
 354 Pa.Super. 128, 511 A.2d 221 (1986);
 
 Commonwealth v. Ellis, supra; Commonwealth v. Bulling,
 
 331 Pa.Super. 84, 480 A.2d 254 (1984).
 

 Id.
 
 393 Pa.Super. at 220-221, 574 A.2d at 88, quoting
 
 Commonwealth v. Pearsall,
 
 368 Pa.Super. 327, 332, 534 A.2d 106, 109 (1987),
 
 allocatur denied,
 
 524 Pa. 596, 568 A.2d 1246 (1989). See also:
 
 Commonwealth v. Snowdy,
 
 412 Pa.Super. 493, 502-503, 603 A.2d 1044, 1048 (1992),
 
 allocatur denied,
 
 533 Pa. 633, 621 A.2d 580 (1993).
 

 In the instant case, Souder testified that she had been graduated from Pennsylvania State University with a B.S. in chemistry. Thereafter, she had undergone five weeks of on-the-job training before she began working for the Pennsylvania State Police. During this time period, she had performed between fifty and one hundred chemical analyses while under the direct supervision of another chemist. At the time of trial, Souder had been employed by the State Police for approximately six months, during which time she had performed approximately nine hundred additional chemical analyses. Although she was still on probationary status, all of her work performance reviews had been satisfactory. She had previously qualified to testify as an expert witness in both York and Dauphin Counties. Although it is true that Souder did not possess a vast wealth of forensic experience, it was sufficiently established that she possessed a reasonable pretension to specific knowledge with regard to chemical testing of suspected illicit drugs. We conclude, therefore, that the trial court did not commit an abuse of discretion when it determined that Souder was qualified to give expert testimony. See:
 
 Com
 
 
 *502
 

 monwealth v. Echevarria,
 
 394 Pa.Super. 261, 266-267, 575 A.2d 620, 623 (1990).
 

 Finding no error in appellant’s trial, the judgment of sentence must be affirmed.
 

 Affirmed.
 

 [1]
 

 . The record forwarded to this Court does not permit us to make a determination of the circumstances which led to Winter’s conviction for arson.
 

 [2]
 

 . See: 18 Pa.C.S. § 3301.